Christine T. Greenwood (8187)
 greenwood@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 850
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

John R. Crossan, (Illinois Bar No. 0548367,
*pro hac vice* appl'n pending)
 jrc@crossaniplaw.com
**CROSSAN IP LAW, LLC**
70 W. Madison St., #5050
Chicago, IL 60602-4214
Telephone: 312.602.1071
Facsimile:  312.264.0110

Attorneys for Plaintiff

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PAUL FIELDS, a citizen of the United Kingdom,**<br><br>    Plaintiff,<br><br>v.<br><br>**OGIO INTERNATIONAL, INC., a Utah Corporation,**<br><br>    **Defendant.** | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br><br><br><br>**Civil No. 2:10-cv-169**<br><br>**Honorable Clark Waddoups** |

   Plaintiff Paul Fields ("Plaintiff" or "Fields") for his complaint against Defendant, states as follows:

### INTRODUCTION

   1.   This is an action for unjust enrichment, unfair competition, and related injunctive relief against Defendant Ogio International, Inc. ("Defendant" or "Ogio").  After confidential disclosure to it of Field's invention in a stiff carrying device engaging one or both of a user's shoulders for carrying, e.g., a golf bag, Ogio has filed for and obtained United States and foreign patent rights, including US patents 6,883,691 and 7,559,443, without naming Paul Fields as a co-inventor.  Since applying for the patents Ogio further has been manufacturing, distributing,

promoting, and offering for sale in interstate commerce its own form of Fields's invention, under the "Shling" trademark, winning for instance the 2004 Professional Golfers Association "Most Innovative Product" award. In 2006, Ogio's Vision SS bag with the Shling System won the prestigious "Baggy" Award in golf.

## PARTIES, JURISDICTION, AND VENUE

2. Paul Fields is a citizen of the United Kingdom, a professional golf instructor and professional golf player, now residing at 9 Skelton Way, Sheffield S13 7QW, United Kingdom.

3. Ogio is a Utah corporation with its headquarters in Salt Lake County, Utah, at 14926 South Pony Express Road, Bluffdale, Utah, 84065. Ogio resides in and is doing business in this federal court district and division.

4. This Court has subject matter jurisdiction over the controversies between the parties under 28 U.S.C. §1331 since they involve questions arising under the statutes of the United States including the Patent Act, 35 U.S.C. §101 *et seq.* and the Lanham Act, 15 U.S.C. §§ 1121, 1125(a) and (c). This Court also has subject matter jurisdiction over the controversies between the parties under 28 U.S.C. §1332 since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Ogio because it is organized under the laws of the State of Utah, does business in Utah and has committed tortious acts in Utah.

6. This Court has pendant jurisdiction over the related state law claims under 28 U.S.C. §1338(b) and under 28 U.S.C. § 1367, because the state law claims are integrally related to the federal claims and arise from a common nucleus of operative facts, such that the resolution of all claims in this action is in the interest of judicial economy.

7. Venue is proper in this Court under 28 U.S.C. §1391, as Ogio has committed acts in this District as stated herein.

## GENERAL ALLEGATIONS

### Paul Fields's Disclosures to Ogio

8. On June 22, 2000, Paul Fields disclosed and demonstrated to Ogio's United Kingdom agent, Mr. Marcus Illingworth, his prototype invention initially captioned "Golf Yoke." This invention was disclosed in a first form in Fields's published UK patent application no. GB 2334669, attached as Exhibit A.

9. An improved form of Mr. Fields's Golf Yoke was soon developed by Mr. Fields and was confidentially disclosed and demonstrated in prototype form to Ogio's UK agent on August 17, 2000. A photo of Mr. Fields demonstrating the second form of his Golf Yoke is attached as Exhibit B.

10. Ogio's UK agent immediately took the Fields invention, on August 21, 2000, in the second prototype form, to Utah for presentation and demonstration to Michael Pratt, Owner and CEO, and to others of Ogio.

11. The Ogio team initially received the Fields invention enthusiastically, Mr. Fields was advised, and financial and legal terms were solicited of Mr. Fields and provided by him to Ogio.

12. Mr. Fields received and recorded a telephone message on November 15, 2000, from Marius Kvinge, then Ogio's Export Manager, on behalf of Michael Pratt. Among other comments, Mr. Kvinge advised that, "we are very interested in the strap system that you have proposed to us," and that, "we would like to incorporate this into our new bag line."

13. By March 2001, on information and belief, Ogio determined to cut Paul Fields out of the project, and to use its own independent designers to develop a golf yoke on exactly the same principles. On April 20, 2001, Ogio's UK agent advised Mr. Fields that the Golf Yoke project was "not commercially viable" and would be discontinued.

### Ogio Took the Fields Invention to Itself

14. Ogio filed for its '691 and '443 patents on November 7, 2002, as U.S. application serial number 10/289,722, claiming Michael Pratt, Scott Warner, Brandon Collette, and James Jensen as inventors, but not naming Paul Fields. The cover sheets of the '691 and '443 patents are attached as Exhibit C.

15. A first form of the Ogio Shling device, incorporating Paul Fields's invention as disclosed in confidence to Ogio, was received to great acclaim at the 2004 PGA Merchandising show, where the Shling won great reviews and was named "Most Innovative Product." Ogio received orders for over 7,000 of the Shling devices at the show, worth $1.4 million.

16. Paul Fields protested to Ogio in 2004 that he was a co-inventor of the Shling device and should be recognized as such. Ogio alternately ignored Mr. Fields and later threatened him with legal action in the UK.

17. Ogio's first, 2004 form of the Shling product was not successful, due to manufacturing difficulties, and only a few were sold or used. Ogio introduced new forms of the Shling products in 2006 for golf bags and in 2007 for briefcases, and it has recently been again redesigning the Shling, through outside designers. The first significant, actual sales of the Shling product for golf bags did not occur until 2006.

18. Discussions between counsel for Mr. Fields and Ogio in 2009-10 have been fruitless.

**Paul Fields First Conceived Elements of the '691 and '443 Patents**

19. Claims of the Ogio '691 patent have at least the following elements which were first conceived by Paul Fields and disclosed and demonstrated to Ogio personnel in August 2000 in confidence, and not clearly disclosed in the Fields '669 patent or application in the UK:

  a. A carrying device adapted to enable the carrying of a cartable item, said carrying device comprising:

   i. means for engaging a first shoulder of a user to support carrying of a cartable item, said means for engaging a first shoulder comprising a rigid primary shoulder area;

   ii. means for electively engaging a second shoulder of a user to provide further carrying support of said cartable item, said means for engaging a second shoulder comprising a rigid secondary shoulder area;

   iii. means for connecting said primary shoulder area to said secondary shoulder area;

   iv. means for transitioning, in a single, efficient motion, said means for electively engaging a second shoulder between a first latent and inactive, off-shoulder position to a second active, secondary cartable item supporting position,

      v. wherein said secondary shoulder area is caused to engage said second shoulder of said user, thus effectuating single to dual-shoulder carrying of said carrying device; and

      vi. means for releasably attaching said carrying device to said cartable item.

  b. The carrying device of a. above, wherein said rigid primary shoulder area comprises an anterior segment and a dorsal segment; and

  c. The carrying device of a. above, wherein said rigid secondary shoulder area comprises an anterior segment and a dorsal segment.

20. Claims of the Ogio '443 method patent have at least the following elements which were first conceived by Paul Fields and disclosed and demonstrated to Ogio personnel in August 2000 in confidence, and not disclosed in the Fields '669 patent or application in the UK:

  a. A method for carrying a cartable item, said method comprising the steps of:

      i. causing a primary shoulder area of a carrying system to engage a first shoulder of a user, wherein said carrying system is in a single-shoulder carrying arrangement;

      ii. actuating, electively, means for transitioning on said carrying system to cause a secondary shoulder area of said carrying system to engage a second shoulder of said user in a single, efficient motion, said step of actuating causes said secondary shoulder area to transition and convert from a latent and inactive, off-shoulder position to an active, supporting position, thus effectuating the transition of said carrying system between a

     single-shoulder carrying arrangement and a dual-shoulder carrying arrangement.

b. A method for carrying a cartable item, said method comprising the steps of:

 i. causing a primary shoulder area of a carrying system to engage a first shoulder of a user, wherein said carrying system is in a single-shoulder carrying arrangement, and wherein said primary shoulder area comprises a rigid frame configuration comprising a dorsal frame portion ergonomically and integrally formed with an anterior frame portion;

 ii. actuating, electively, means for transitioning on said carrying system to cause a secondary shoulder area of said carrying system to engage a second shoulder of said user in a single, efficient motion, said step of actuating causes said secondary shoulder area to transition and convert from a latent and inactive, off-shoulder position to an active, supporting position, thus effectuating the transition of said carrying system between a single-shoulder carrying arrangement and a dual-shoulder carrying arrangement.

c. A method for carrying a cartable item, said method comprising the steps of:

 i. causing a primary shoulder area of a carrying system to engage a first shoulder of a user, wherein said carrying system is in a single-shoulder carrying arrangement;

 ii. actuating, electively, means for transitioning on said carrying system to cause a secondary shoulder area of said carrying system to engage a

second shoulder of said user in a single, efficient motion, said step of actuating causes said secondary shoulder area to transition and convert from a latent and inactive, off-shoulder position to an active, supporting position, thus effectuating the transition of said carrying system between a single-shoulder carrying arrangement and a dual-shoulder carrying arrangement, and wherein said secondary shoulder area comprises a rigid frame configuration comprising a dorsal frame portion ergonomically and integrally formed with an anterior frame portion.

21.     Other elements of claims of the '691 and '443 Ogio patents were first conceived by Paul Fields and disclosed to Ogio by Paul Fields in his August 2000 meetings with Ogio's UK agent. These elements were adopted by Ogio without crediting Paul Fields for his inventorship and without compensating him for same.

22.     By Ogio's obtaining U.S. and foreign patents and filing for additional foreign patents, it has effectively precluded Paul Fields from licensing or manufacturing his Golf Yoke, now called the Golf Bone.

**FIRST CAUSE OF ACTION**
**(Correction of Inventorship – 35 U.S.C. § 256)**

23.     Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully herein.

24.     Despite clear and convincing, corroborated evidence that Fields is the first inventor of elements of the inventions defined by numerous claims of the '691 and '443 Ogio patents, Fields is not listed as an inventor on the patents.

25. Fields conceived of and was first to reduce to practice claimed elements of the inventions set forth in claims of the '691 and '443 Ogio patents.

26. Because Fields conceived of and substantially contributed to one or more or all of the claims of the '691 and '443 Ogio patents, he is necessarily a co-inventor of the '691 and '443 Ogio patents.

27. The omission of Fields as con-inventor of the '691 and '443 Ogio patents is without any deceptive intent on his part.

28. Fields is entitled to the issuance of a Certificate of Correction under 35 U.S.C. § 256 to add him as a co-inventor of the '691 and '443 Ogio patents, and to recordation of documents to confirm his ownership interest in the '691 and '443 Ogio patents.

29. This is an exceptional matter entitling Fields to collection from Ogio of his attorney fees in this matter under 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

30. Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully herein.

31. Fields has conferred a benefit or benefits on Ogio, including without limitation by providing valuable intellectual property and confidential information to Ogio.

32. At all relevant times, officers and principals of Ogio appreciated and had knowledge of these substantial benefits conferred upon it by Fields.

33. Ogio was able to secure the '691 and '443 Ogio patents as a direct result of the benefits conferred upon it by Fields.

34. Ogio accepted and retained the benefits conferred by Fields, and it would be inequitable for Ogio to retain the benefits without paying Fields the value thereof.

35. Fields is entitled to a judgment for unjust enrichment against Ogio in an amount to be determined at trial, including without limitation for disgorgement of its wrongfully-earned profits, plus costs, interest and attorney fees.

36. Ogio's actions were willful, malicious, and with an intent to harm Fields, and in utter disregard of Fields's rights. Indeed, despite the receipt of letters from Fields's counsel, demanding recognition for Fields's invention, Ogio has continued to sell its Shling products without attribution to Plaintiff. As such, Fields is entitled to punitive and exemplary damages, plus costs, interest, and attorney fees as allowed by law.

### THIRD CAUSE OF ACTION
(Unfair Competition – Utah Code Ann. § 13-5a-101 *et. seq.*)

37. Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully herein.

38. Ogio's actions constitute intentional business acts and practices that are unlawful, unfair and fraudulent.

39. Ogio's acts and practices have directly and proximately caused a material diminution in value of Fields's intellectual property.

40. Ogio's acts and practices amount to infringement of Fields's intellectual property rights.

41. Ogio has engaged in unfair competition, directly and proximately causing harm to Fields.

42. Pursuant to Utah Code Ann. § 13-5a-103(1)(b), Fields is entitled to actual and punitive damages, costs and attorney fees.

## FOURTH CAUSE OF ACTION
### (Conversion)

43. Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully herein.

44. Ogio has willfully and intentionally interfered with personal property belonging to Fields, including but not limited to the inventions

45. Ogio's interference was and is without lawful justification.

46. Ogio's interference deprived Plaintiff of the exclusive use, possession and/or control of its property.

47. As a direct and proximate result of Ogio's conduct, Fields has been damaged in an amount to be proven at trial.

48. Fields is also entitled to punitive damages because Ogio's conversion of Fields property was and is willful and malicious, which manifests a knowing and reckless indifference towards the rights of Fields.

## FIFTH CAUSE OF ACTION
### (Unfair Competition and False Designation of Origin, Sponsorship and Approval – Lanham Act 15 U.S.C. § 1125(a))

49. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully herein.

50. Ogio's deceptive advertising has caused and will continue to cause confusion, mistake and deceit among consumers and potential consumers as to the origin, sponsorship, and approval of Ogio's Shling-type goods and services, including without limitation by misleading

consumers and potential consumers into believing that Ogio is the sole inventor of the Shling products.

51. Ogio has engaged in unfair methods of competition and deceptive acts in violation of 15 U.S.C. § 1125(a).

52. Ogio has engaged in its conduct knowingly, willfully, with actual malice, and in bad faith, so as to justify the assessment of treble damages against it.

53. Fields has been damaged by Ogio's conduct in an amount to be determined at trial.

54. Ogio's actions have caused and, unless enjoined by the Court, will continue to cause, irreparable damage, loss and injury to Fields for which he has no adequate remedy at law.

55. Because Ogio's actions are wrongful, malicious, deliberate, willful and intentional, this is an exceptional case, entitling Fields to an award of attorney fees and costs under the Lanham Act.

56. Fields is entitled to a destruction order requiring Ogio to destroy all labels, signs, print, packaging, advertising, and marketing materials for the Shling products that fail to mention Fields's contribution to the Shling products.

57. Fields is entitled to a recall order requiring Ogio to recall all labels, signs, print, packaging, advertising and marketing materials for the Shling products that fail to mention Fields's contribution to the Shling products.

58. Fields is entitled to a notification order requiring Ogio to notify from all distributors, retailers, and outlets that market, sell or advertise Ogio's Shling products of the Court's destruction and recall orders.

59. Fields is entitled to a full accounting of all gains, profits, and advantages derived by Ogio through its advertising, and to a full accounting regarding Ogio's compliance with the Court's destruction, recall and notification orders.

## SIXTH CAUSE OF ACTION
### (Preliminary and Permanent Injunction)

60. Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully herein.

61. As a result of Ogio's actions, Fields has sustained and will continue to sustain irreparable harm and damage, for which there is no adequate remedy at law, including without limitation loss of the opportunity to exploit his invention, loss of goodwill in sales and promotion of his own invention in his own name, and the like.

62. The ongoing and threatened irreparable injuries to Fields, including without limitation loss of the opportunity to exploit his invention, loss of goodwill in sales and promotion of his own invention in his own name, and the like, outweigh any purported harm a proposed injunction may cause to Ogio.

63. A proposed injunction would not be adverse to the public interest, but instead would serve the public by advancing the underlying purposes of the patent laws.

64. There is a substantial likelihood that Fields will prevail on the merits of his claims against Ogio.

65. Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fields is entitled to a preliminary and permanent injunction as follows:

    a. Ogio shall be enjoined from manufacturing, selling and/or advertising for sale any additional Shling or Shling-related products without proper correction of the '691

      and '443 Ogio patents, proper attribution to Fields as a co-inventor of the '691 and '443 Ogio patents, and proper compensation of Fields for his role as co-inventor of the '691 and '443 Ogio patents.

   b. Ogio shall recall all Shling or Shling-related products, advertising and promotional material which falsely represent Ogio as the sole inventor of the products.

   c. Ogio shall notify all distributors and retail stores which sell Shling products of this Court's recall orders.

   d. Ogio shall undertake other corrective behavior as determined by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

I. On each of the Causes of Action, for judgment including an award of damages and injunctive relief as determined at trial or by the Court, including without limitation for disgorgement of wrongfully-earned profits, punitive or other exemplary damages, pre- and post-judgment interest, costs, and attorney fees.

II. On the First and Second Causes of Action, for an instruction to be issued to the Director of Patents, US Patent and Trademark Office, to issue a Certificate of Correction additionally naming Paul Fields, of Sheffield, UK, as a co-inventor on each of the '691 and the '443 patents.

III.  On the Seventh Cause of Action, for preliminary, and thereafter permanent, injunctive relief enjoining Ogio and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Court's injunction by personal service or otherwise as set forth above.

IV.  For such other and further relief as may be just in the circumstances be granted to Paul Fields.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Plaintiff demands a trial by jury on all issues so triable.

DATED this 24th day of February 2010.

**MAGLEBY & GREENWOOD, P.C.**

*Christine T. Greenwood*