Gregory S. Moesinger (Utah Bar No. 10680)
Michael F. Krieger (Utah Bar No. 5984)
Adam D. Stevens (Utah Bar No. 10986)
KIRTON & McCONKIE
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Tel. 801-328-3600
Fax 801-321-4893
Email gmoesinger@kmclaw.com
mkrieger@kmclaw.com
astevens@kmclaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
For the District of Utah

| | |
|---|---|
| PAUL FIELDS<br>a citizen of the United Kingdom,<br><br>Plaintiff,<br>vs.<br><br>OGIO INTERNATIONAL, INC.,<br>a Utah corporation,<br><br>Defendant. | Civil Action No. 2:10-cv-169<br><br>Judge Clark Waddoups<br><br>**ANSWER AND COUNTERCLAIM** |

Defendant, Ogio International, Inc., by and through its attorneys, answers the above-captioned Complaint as follows:

**FIRST DEFENSE**

In response to the specific allegations of Plaintiff Paul Fields ("Plaintiff" or "Fields"), Defendant Ogio International Inc. ("Defendant" or "Ogio"):

INTRODUCTION

1. Is without sufficient information to admit or deny the characterizations of paragraph 1 of the Complaint which are addressed individually in the other paragraphs of the Complaint, and therefore denies the same.

PARTIES, JURISDICTION, AND VENUE

2. Admits on information and belief that Fields is a citizen of the United Kingdom as described.

3. Admits paragraph 3.

4. Admits that this court has subject matter jurisdiction over the federal patent law claims recited in the Complaint.

5. Admits that this Court has personal jurisdiction over Ogio but denies that tortious acts have been committed by Ogio.

6. Is without sufficient information to determine whether the jurisdictional allegations of paragraph 6 have merit, and therefore denies the same.

7. Admits that venue is proper in this Court but otherwise denies paragraph 7 as paragraph 7 conflates multiple issues restated in the Complaint with more detail. Therefore, Ogio refers to the specific answers to those paragraphs herein.

GENERAL ALLEGATIONS OF FIELDS

8. Admits that Fields disclosed and demonstrated at least one device to an Ogio representative, but is without sufficient information at present to admit or deny the specifics of the allegation of the relationship between the demonstrated device and Fields's UK patent, and therefore denies all other allegations of paragraph 8.

9. Admits that Fields disclosed and demonstrated at least one device to an Ogio representative and admits on information and belief without specific knowledge or recollection of exact dates that the disclosure occurred in or around August 2000 as described in the Complaint, but is without sufficient information at the present time to admit or deny the specifics of paragraph 9, and therefore denies all other allegations of paragraph 9.

10. Admits that a Fields device was transported to Utah and demonstrated to Mike Pratt and others at Ogio, but is without sufficient information at the present time to admit or deny whether the device shown was Fields's invention and therefore denies all other allegations of paragraph 10.

11. Admits that persons at Ogio initially received the information and prototype disclosed by Fields enthusiastically; however, that enthusiasm waned as Ogio discovered the design deficiencies of the Fields products and began to believe that the Fields products were not commercially-viable products. Ogio is without sufficient information at the present time to admit or deny whether financial and legal terms were solicited of Fields or received by Ogio, and therefore denies all other allegations of paragraph 11.

12. On information and belief, understands that a telephone message was received by Fields. Ogio is not in possession of a copy of that message and cannot verify its contents or veracity at this time. However, Fields had previously provided Ogio with a transcript of the alleged voice mail, which also included additional comments not included in the Complaint, including "we would like to incorporate this into our new bag line. How exactly we are going to do it yet, we don't know . . . we are looking at and thinking about . . . it." Until such time as Ogio can verify the veracity of the alleged voice mail, Ogio otherwise denies the allegations of paragraph 12.

13. Denies paragraph 13.

14. Admits that Ogio filed the application for U.S. Patent No. 6,883,691 as application serial no. 10/289,722 on November 7, 2002, and that the application named Michael James Pratt, Scott Kendrick Warner, Brandon Brent Collette and James Jensen as inventors and did not name Paul Fields as an inventor. U.S. Patent No. 7,559,443 issued from an application that was actually filed on December 15, 2004 as application serial no. 11/013,215 naming the same inventors, and Ogio therefore denies any inaccuracies present in paragraph 14 of the Complaint.

15. Admits that a first form of the Ogio Shling device was initially received well at the 2004 PGA Merchandizing show and that Ogio received some orders of golf bags that included the Shling device at the show. The Shling device was not offered separately at the show and the Complaint errs in attributing the total cost of orders to the Shling device alone, as the Shling device was only a component of the ordered bags. Additionally, not all the initial

orders were completed by the purchasers, and the total value of the product actually sold and fulfilled and attributable to the Shling device was well under the amount recited in the Complaint. The Shling device was significantly different from the devices demonstrated to Ogio by Fields, and Ogio therefore denies all other allegations of paragraph 15.

16. Denies paragraph 16.

17. Denies paragraph 17.

18. Admits paragraph 18.

19. Denies paragraph 19.

20. Denies paragraph 20.

21. Denies paragraph 21.

22. Denies paragraph 22.

DEFENSE TO FIRST CAUSE OF ACTION

23. Incorporates its responses to paragraphs 1-22 above.

24. Admits that Fields is not listed as an inventor on the patents and otherwise denies paragraph 24.

25. Denies paragraph 25.

26. Denies paragraph 26.

27. Is without sufficient information to admit or deny the allegations of paragraph 27 of the Complaint and therefore denies the same.

28. Denies paragraph 28.

29. Denies paragraph 29.

DEFENSE TO SECOND CAUSE OF ACTION

30. Incorporates its responses to paragraphs 1-29 above.

31. Denies paragraph 31.

32. Denies paragraph 32.

33. Denies paragraph 33.

34. Denies paragraph 34.

35. Denies paragraph 35.

36. Admits selling Shling products without attribution to Fields, but otherwise denies paragraph 36.

DEFENSE TO THIRD CAUSE OF ACTION

37. Incorporates its responses to paragraphs 1-36 above.

38. Denies paragraph 38.

39. Denies paragraph 39.

40. Denies paragraph 40.

41. Denies paragraph 41.

42. Denies paragraph 42.

DEFENSE TO FOURTH CAUSE OF ACTION

43. Incorporates its responses to paragraphs 1-42 above.

44. Denies paragraph 44.

45. Denies paragraph 45.

46. Denies paragraph 46.

47. Denies paragraph 47.

48. Denies paragraph 48.

## DEFENSE TO FIFTH CAUSE OF ACTION

49. Incorporates its responses to paragraphs 1-48 above.

50. Denies paragraph 50.

51. Denies paragraph 51.

52. Denies paragraph 52.

53. Denies paragraph 53.

54. Denies paragraph 54.

55. Denies paragraph 55.

56. Denies paragraph 56.

57. Denies paragraph 57.

58. Denies paragraph 58.

59. Denies paragraph 59.

## DEFENSE TO SIXTH CAUSE OF ACTION

60. Incorporates its responses to paragraphs 1-59 above.

61. Denies paragraph 61.

62. Denies paragraph 62.

63. Denies paragraph 63.

64. Denies paragraph 64.

65. Denies paragraph 65.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted against Ogio.

SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims fail to the extent they are barred by the doctrines of waiver, laches, and/or release.

THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims fail to the extent they are barred by the doctrines of estoppel and/or equitable estoppel.

FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or limited by its failure to mitigate its damages.

FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail to the extent Ogio did not cause Plaintiff to suffer any damages in any amount whatsoever.

SIXTH AFFIRMATIVE DEFENSE

At all times relevant hereto, Ogio engaged in conduct permitted and/or authorized by virtue of the Constitution and laws of Utah and/or the United States and the laws of all relevant jurisdictions.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail to the extent they failed to follow or comply with the procedures and statutory requirements set forth in the United States Code and/or Utah Code.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred by the doctrine of offset, in that Ogio has been damaged by the actions of Plaintiff in an amount equal to or exceeding the Plaintiff's claimed damages.

RESERVATION OF AFFIRMATIVE DEFENSES

Ogio reserves the right to hereafter assert any other affirmative defense as may be supported by the evidence developed during the course of discovery in this matter.

WHEREFORE, Ogio prays that Plaintiff take nothing by his Complaint, but that it be dismissed, no cause of action; that the Court declare this an exceptional case, and award Ogio its costs, expenses and attorneys' fees incurred in appearing and defending this action; and, that Ogio be granted such other and further legal and equitable relief as this Court deems proper and just.

## COUNTERCLAIM

PARTIES

1. Counterclaim Plaintiff, Ogio International, Inc. ("Ogio"), is a corporation organized and operating under the laws of the State of Utah with a principle place of business in Salt Lake County, Utah. Ogio designs, develops, produces, manufactures, markets, sells and distributes golf equipment and accessories, among other products.

2. On information and belief, Counterclaim Defendant, Paul Fields ("Fields"), is a citizen of the United Kingdom and resides therein.

## BACKGROUND

3. This counterclaim action arises under the patent laws of the United States. 35 U.S.C. § 1 et seq. The claims arise out of the circumstances described in plaintiff's Complaint.

## GENERAL ALLEGATIONS

4. Ogio's business includes the designing and manufacturing of a variety of golf bags and accessory products for golf bags. Ogio also designs and manufactures a variety of bags and other products for other uses outside of golf. Its design and manufacturing process extends to all aspects of the golf and other bags, including carrying systems for those bags. Ogio is continually seeking to improve its product lineup with innovative new products.

5. Over the years, Ogio and/or its employees have been granted over one dozen U.S. Patents on its innovative products. Ogio has several patents covering aspects of its Shling products, including U.S. Patent Nos. 6,993,691 and 7,559,443 named in the Complaint.

6. Golf bags have existed for many years, but as part of Ogio's product design process, Ogio has designed many improvements in golf bags. The existence of prior golf bags has not prevented Ogio from obtaining patents on its new and innovative improvements to what previously existed in the golf bag market. In fact, most patents are granted on improvements of existing technology; only very few patents are granted on entirely new technology. Golf stand bags are an example of this. While golf stand bags have existed for many years, the golf industry is continually seeking to improve the function of the stands of such bags and numerous patents have been granted to improvements in such stands.

7. Patents are designed to encourage disclosure of information by providing a term of limited exclusivity in the jurisdiction of the patent in exchange for teaching others how to make and use the protected invention. Thus, the disclosure of the patent or patent application is free for all to use once it has become publically available: in the jurisdiction covered by the patent, use is limited until the patent expires, and outside the jurisdiction use is available upon publication.

8. This publically-available knowledge is routinely built upon by others and new patents are sought for the advancements in knowledge. In many instances, the inventor named in the earlier patent is not named as an inventor for others' later inventions that build on an earlier inventor's work. This is considered routine and proper when naming inventors in patents.

9. Fields's U.K. Patent GB 2,334,669 (Exhibit A of the Complaint) was published and became publically available on September 1, 1999, before any of the contact between Fields and Ogio discussed in the Complaint occurred. On information and belief, Fields did not seek patent protection outside of the U.K. Therefore, the disclosure of Fields's U.K. patent became publically-available information on that date in all jurisdictions outside the U.K.

10. On information and belief, Fields's first disclosure to Ogio or its representatives occurred no earlier than the June 22, 2000 date recited in the Complaint, nearly one year after publication of Fields's U.K. patent.

11. Ogio's representatives were initially enthusiastic about the product demonstrated by Fields and did express interest in incorporating his product into Ogio's golf bag line; however, Ogio was initially not sure how the Fields product could be best incorporated into its

products and determined to study the matter further. In fact, on information and belief, the telephone message from Mr. Kvinge to Fields stated, "we would like to incorporate this into our new bag line. How exactly we are going to do it yet, we don't know . . . we are looking at and thinking about . . . it."

12. As Ogio studied and investigated the Fields product further and contemplated how it could be incorporated into Ogio's golf bag line, some significant difficulties were discovered. For example, as may be seen in the pictures attached to Fields's Complaint and in the drawings of his U.K. patent, the straps that support the golf bag are attached to the device at each end, and hang down behind the user's back. Ogio discovered that this is problematic in that this configuration keeps the golf bag slung across the user's back during use of the Fields devices, so the golf clubs and pockets of the golf bag are not easily within reach (see Figure 1(A) of Fields's patent). As golfers commonly wish to have access to contents of their golf bags while carrying the bags, this positioning was problematic. Additionally, most golf bags are substantially rigid, and the Fields devices positioned the rigid golf bag directly against the user's spine in an uncomfortable manner. Because the Fields devices positioned the golf bag sideways across the user's back, the user would have been unable to readily pass through narrow areas, such as doorways, while using the device. Instead, the user of the Fields devices would have had to either walk sideways, remove the device, or torque the bag against the supporting straps in an awkward manner. When golfers travel short distances, they often wish to carry their bags on one shoulder only, and Ogio found the Fields device to be awkward for single-shoulder use. Thus, as

Ogio continued to investigate the Fields devices, it became apparent that the Fields devices would not function well in Ogio's golf bag market.

13. The Fields devices were essentially simple yokes with curves incorporated that provide supporting surfaces designed to contact a front side of the user's shoulders. The Fields devices looked different than previous devices, but were essentially functionally similar to many existing yokes.

14. After completing its study of the Fields devices, Ogio determined that the devices did not function in a way that would be suitable for incorporation into Ogio's golf bag line and decided not to further pursue a relationship with Fields.

15. Nevertheless, and spurred at least in part by consideration of the Fields devices and the difficulties with those devices, persons at Ogio began thinking about how a rigid carrying device could be made that would work better as a golf bag carrying device than the Fields devices.

16. Over a significant period of time and with significant design efforts, Ogio designed the original Shling device as shown in the '691 patent and in the '443 patent. This device included significant differences from existing devices and from any devices demonstrated to Ogio by Fields. For example, the original Shling device includes a transitioning arm that extends downward from a shoulder region of the device to serve as a handle for manipulating the device. This handle serves to allow a user to more-easily manipulate the Shling device to put it on or take it off when carrying a golf bag.

17. Additionally, the straps that are connected between the Shling device and the golf bag are connected at very different points of the device than a traditional yoke-type device such as the Fields devices. As seen on the cover page of Ogio's '691 patent attached to Fields's Complaint, one strap is attached in the center of the back of the device, and the other is attached near the handle. In use, this second strap is actually attached to the Shling device in front of the user. This strap configuration allowed the golf bag to be carried to the side of the user as is more natural in golfing, thus providing easier access to the golf clubs and other bag contents without requiring that the user remove the bag from the carrying position, and preventing many of the difficulties Ogio perceived in the Fields devices.

18. Significant design features of the original Shling device such as these, while certainly building on the many then-existing or then-known yoke devices, including Fields's publically-available design, did not involve any input from Fields in any way. As such, Ogio did not and does not believe Fields was an inventor of the Shling device. Therefore when Ogio sought to protect the new device with patents, neither Fields nor the inventors of any other predecessor yoke devices were named on the patent applications.

19. During prosecution of the patents, Ogio disclosed the existence of Fields's U.K patent to the patent office for consideration (see cover page of the '691 patent attached to the Complaint, right-hand column, second patent listed under "Foreign Patent Documents"). The U.S. Patent Office determined that the claimed inventions were patentable over the existing art, including the Fields patent.

20. Although the Shling device was initially viewed favorably by golf industry analysts, it has not been commercially successful with consumers. The initial version of the Shling device did not incorporate any sizing capability to fit users of different body proportions, and a portion of the market therefore found the device uncomfortable to use. Even after Ogio redesigned the product to include sizing features, the device has still not been commercially successful. Ogio has never recovered the costs it invested in designing, producing, marketing and protecting the various Shling devices through sales of products incorporating the Shling devices. In fact, the commercial receipt of the Shling devices was poor enough that Ogio provided at least some complaining customers with standard straps to replace the Shling devices.

21. In 2004, Fields released a press release to U.S. and U.K. markets disparaging Ogio and also sent letters to Ogio and its representatives threatening infringement enforcement against Ogio for any sales of the Shling product in the United Kingdom. Thus, Fields sought to obtain compensation from Ogio based on his U.K. Patent. While Ogio initially sought to enter licensing discussions with respect to Fields's U.K. patent, Ogio obtained an opinion of non-infringement of the Shling product with respect to Fields's U.K. patent and therefore terminated any attempts to license Fields's U.K. patent. Ogio also informed Fields at that time that further attempts to slander Ogio would force Ogio to take legal action against Fields for such defamatory communications.

22. Only after Fields's initial attempt to obtain compensation from Ogio failed did Fields raise his alleged claim of co-inventorship of the Shling products as an alternative mechanism to extract money from Ogio.

23. Ogio has never taken any action designed to prevent Mr. Fields from selling his own invention. Ogio has never threatened infringement litigation against Fields and has never alleged that its patents cover any Fields products. On information and belief, Fields has displayed his products at golf shows for many years and has never been commercially successful. This lack of success is not due to any action on the part of Ogio, but is due to a difficult market for products such as the Fields products as well as the Shling devices, and is also due to deficiencies in the Fields products themselves, which were recognized by Ogio and which led to the design process resulting in the Shling devices. Ogio is in no way responsible for the industry's poor reception of the Fields products.

24. Upon information and belief, Ogio has not actively advertised any Shling products for at least two years due to the poor reception of the Shling products by the industry and consumers. Ogio has not manufactured or purchased for sale from its manufacturers a bag incorporating a Shling device for at least three years. Ogio acknowledges that there may be certain retailers that still have bags incorporating a Shling device in stock. To the extent this is the case, this fact is due to no recent action of Ogio and is in fact a testament to the poor reception of the Shling products by the market.

## FIRST CLAIM FOR RELIEF
(Declaratory Judgment of Inventorship of the '691 Patent)

25. Ogio incorporates by reference paragraphs 1 through 22 of this Counterclaim as though set forth here in full.

26. Ogio requests this Court to exercise its declaratory judgment powers and declare that Paul Fields is not a co-inventor of the '691 Patent.

27. The conduct of the Plaintiff in alleging inventorship on the part of Paul Fields has been willful, in bad faith and/or in reckless disregard of the rights of Ogio.

## SECOND CLAIM FOR RELIEF
(Declaratory Judgment of Inventorship of the '443 Patent)

28. Ogio incorporates by reference paragraphs 1 through 25 of this Counterclaim as though set forth here in full.

29. Ogio requests this Court to exercise its declaratory judgment powers and declare that Paul Fields is not a co-inventor of the '691 Patent.

30. The conduct of the Plaintiff in alleging inventorship on the part of Paul Fields has been willful, in bad faith and/or in reckless disregard of the rights of Ogio.

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment of Ownership of the '691 Patent)

31. Ogio incorporates by reference paragraphs 1 through 28 of this Counterclaim as though set forth here in full.

32. Ogio requests this Court to exercise its declaratory judgment powers and declare that the '691 patent is owned by Ogio by way of assignments of rights signed by the named inventors and that Paul Fields has no ownership right in the '691 Patent.

## FOURTH CLAIM FOR RELIEF
(Declaratory Judgment of Ownership of the '443 Patent)

33. Ogio incorporates by reference paragraphs 1 through 30 of this Counterclaim as though set forth here in full.

34. Ogio requests this Court to exercise its declaratory judgment powers and declare that the '443 patent is owned by Ogio by way of assignments of rights signed by the named inventors and that Paul Fields has no ownership right in the '443 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff, Ogio International, Inc., prays for judgment as follows:

1. Declaratory Judgment that Paul Fields is not a co-inventor of U.S. Patent No. 6,883,691 ("the '691 patent).

2. Declaratory Judgment that Paul Fields is not a co-inventor of U.S. Patent No. 7,559,443 ("the '443 patent).

3. Declaratory Judgment that Paul Fields has no ownership interest in the '691 patent.

4. Declaratory Judgment that Paul Fields has no ownership interest in the '443 patent.

5. For temporary, preliminary, and permanent injunctive relief ordering the Plaintiff to refrain from alleging ownership of the '691 patent, the '443 patent or any rights thereto or the inventions described therein.

6. For reasonable attorney's fees.

7. For costs of suit incurred in this action.

8. For such further relief as the Court may deem proper.

JURY DEMAND

A demand is hereby made for trial by jury.

DATED this 18th day of March, 2010.

KIRTON & McCONKIE

By: s/Michael Krieger
Gregory S. Moesinger
Michael F. Krieger
Adam D. Stevens

Attorneys for Plaintiff
OGIO INTERNATIONAL, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of March, 2010, the foregoing ANSWER AND COUNTERCLAIM was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Christine Greenwood
MAGELBY GREENWOOD
170 South Main Street, Suite 850
Salt Lake City, Utah 84111
greenwood@mgpclaw.com

s/Adam D. Stevens

4846-7081-8565